No. 21-20547

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

LAUREN VERSAGGI,

Plaintiff–Appellant

v.

KLS MARTIN, L.P.,

Defendant–Appellee

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION
4:19-CV-02977

---

**KLS MARTIN, L.P.'S BRIEF AS APPELLEE**

---

Emily Mack
**Burr & Forman LLP**
222 2nd Avenue South, Suite 2000
Nashville, Tennessee 37201
Telephone: (615) 724-3252
Facsimile: (615) 724-3352
emack@burr.com

**COUNSEL FOR
DEFENDANT-APPELLEE**

1

# CERTIFICATE OF INTERESTED PERSONS

No. 21-20547

LAUREN VERSAGGI,

Plaintiff—Appellant

v.

KLS MARTIN, L.P.,

Defendant—Appellee

Counsel of Record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| PLAINTIFF—APPELLANT | COUNSEL |
|---|---|
| LAUREN VERSAGGI | Raffi Melkonian<br>Wright, Close & Barger LLP<br>1 Riverway Drive<br>Houston, TX 77056<br>713-572-4321<br><br>Victor James Versaggi<br>Domengeaux Wright Roy Edwards<br>& Colomb, L.L.C.<br>556 Jefferson Street<br>Lafayette, LA 70501<br>337-233-3033 |

| DEFENDANT—APPELLEE | COUNSEL |
|---|---|
| KLS Martin, L.P. | Emily H. Mack<br>Burr & Forman, LLP<br>222 Second Ave. S., Suite 2000<br>Nashville, TN 37201<br>(615) 724-3200<br><br>Zachary C. Lawson<br>Burr & Forman, LLP<br>222 Second Ave. S., Suite 2000<br>Nashville, TN 37201<br>(615) 724-3200 |

/s/    Emily H. Mack
Emily H. Mack

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fifth Circuit Local Rule 28.2.3, counsel for KLS states that oral argument is not needed because the dispositive issues on appeal have been authoritatively decided, the facts and legal arguments are adequately presented in the briefs and record, and the decisional process will not be aided by oral argument.

## RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Appellee KLS Martin, L.P. hereby submits its corporate disclosure statement, stating as follows:

Appellee KLS Martin, L.P. is a Delaware limited partnership and has no parent corporation or stock.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..........................................i

STATEMENT REGARDING ORAL ARGUMENT ............................... iii

RULE 26.1 DISCLOSURE STATEMENT.................................................iv

TABLE OF CONTENTS ......................................................... v

TABLE OF AUTHORITIES....................................................viii

STATEMENT OF THE ISSUES................................................1

INTRODUCTION.................................................................3

STATEMENT OF THE CASE ................................................7

A.  Factual Background.............................................................7

    1. Versaggi's Employment with KLS..........................................7

    2. Versaggi is Subjected to Cyberstalking by a Third-Party, Cynthia Mendoza. .........................................................7

    3. Versaggi Notifies KLS of Mendoza's Conduct and Requests Limited Interaction with Smith Due to Ongoing Criminal Investigation and Personal Safety Concerns. ...............................8

    4. KLS promptly addresses Versaggi's concerns; she has no direct contact with Smith during the remainder of her employment with KLS. ...............................................................9

    5. Versaggi Resigns from KLS after all Sales Employees are asked to Sign Updated Non-Compete.........................................12

B. Procedural Background. ................................................... 13

SUMMARY OF THE ARGUMENT ...................................... 14

STANDARD OF REVIEW ................................................... 15

ARGUMENT ...................................................................... 17

I.   The District Court Correctly Dismissed Versaggi's Failure-to-
Accommodate Claim. ..................................................... 17

    A. Versaggi failed to file a timely charge of discrimination with
respect to this claim .......................................................... 17

    B. Versaggi's failure-to-accommodate claim also fails on its merits. 19

        1. The district court correctly held that Versaggi's requests based
on personal safety were insufficient to put KLS on notice of any
alleged disability. ........................................................... 19

        2. KLS reasonably accommodated Versaggi, and her brief does
not even attempt to argue otherwise. .......................... 22

II.  This Court should affirm the district court's grant of summary
judgment on Versaggi's hostile work environment claim. .................... 27

III. This Court should affirm the district court's grant of summary
judgment on Versaggi's retaliation and constructive discharge claims. 31

    A. Versaggi's complaint does not plead retaliation or constructive
discharge. ........................................................................ 31

    B. Even if Versaggi had pleaded a retaliation claim, it fails as a
matter of law .................................................................... 33

C. Even if Versaggi had pleaded a constructive discharge claim, it too would fail as a matter of law. ....................................................... 37

CONCLUSION .......................................................................................... 38

CERTIFICATE OF SERVICE .................................................................. 39

CERTIFICATE OF COMPLIANCE .......................................................... 40

# TABLE OF AUTHORITIES

Page(s)

Cases

*Aldrup v. Caldera*,
  274 F.3d 282 (5th Cir. 2001)................................................................26

*Audler v. CBC Innovis Inc.*,
  519 F.3d 239 (5th Cir. 2008)...............................................................14

*Case v. State Farm Mut. Auto. Ins. Co.*,
  294 F.2d 676 (5th Cir. 1961)...............................................................32

*Dandridge v. Principal Mgmt. Grp. of N. Texas*,
  2021 WL 1688438 (N.D. Tex. Apr. 29, 2021).......................................33

*DeHart v. Baker Hughes Oilfield Operations, Inc.*,
  214 Fed. App'x 437 (5th Cir. 2007)......................................................35

*E.E.O.C. v. Agro Distrib., LLC*,
  555 F.3d 462 (5th Cir. 2009)...............................................................23

*F.D.I.C. v. Barton*,
  233 F.3d 859 (5th Cir. 2000)...............................................................16

*Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*,
  730 F.3d 450 (5th Cir. 2013).........................................................19, 26

*Gardner v. CLC of Pascagoula, L.L.C.*,
  915 F.3d 320 (5th Cir. 2019)...............................................................28

*Grice v. FMC Techs., Inc.*,
  216 Fed. App'x 401 (5th Cir. 2007)......................................................35

*Griffin v. United Parcel Serv., Inc.*,
661 F.3d 216 (5th Cir. 1996) .................................................................. 19

*Haley v. All. Compressor LLC*,
391 F.3d 644 (5th Cir. 2004) ................................................................. 37

*Henson v. Bell Helicopter Textron, Inc.*,
128 F. App'x 387 (5th Cir. 2005) .......................................................... 17

*Hood v. Sears Roebuck & Co.*,
168 F.3d 231 (5th Cir. 1999) ................................................................. 17

*Jackson v. Gautreaux*,
3 F.4th 182 (5th Cir. 2021) ...................................................... 16, 32, 33

*Jiles v. Wright Med. Tech., Inc.*,
313 F. Supp. 3d 822 (S.D. Tex. 2018) ................................................... 23

*King v. Louisiana*,
294 Fed. App'x 77 (5th Cir. 2008) ......................................................... 35

*Lanier v. Univ. of Texas Sw. Med. Ctr.*,
527 F. App'x 312 (5th Cir. 2013) ........................................................... 22

*Matherne v. Ruba Mgmt.*,
624 F. App'x 835 (5th Cir. 2015) ........................................................... 30

*Nat'l R.R. Passenger Corp. v. Morgan*,
536 U.S. 101 (2002) .............................................................. 17–18, 18

*Patton v. Jacobs Eng'g Grp., Inc.*,
874 F.3d 437 (5th Cir. 2017) ......................................................... 22, 28

*Paul v. Elayn Hunt Corr. Ctr.*,
666 F. App'x 342 (5th Cir. 2016) ..................................................... 33–34

*Pegues v. Mississippi State Veterans Home*,
736 F. App'x 473 (5th Cir. 2018) ........................................................... 25

*Petro Harvester Operating Co., L.L.C. v. Keith,*
   954 F.3d 686 (5th Cir. 2020) ...................................................................15

*Rhodes v. Comcast Cable Communs. Mgmt., LLC,*
   2016 WL 4376653 (D. Md. Aug. 17, 2016) ....................................26, 27

*Salamone v. Cent. Piedmont Cmty. Coll.,*
   2020 WL 697842 (W.D.N.C. Feb. 11, 2020) ..................................26, 27

*Seaman v. CSPH, Inc.,*
   179 F.3d 297 (5th Cir. 1999) ...................................................................36

*Strauss v. Potter,*
   2011 WL 1463582 (S.D. Tex. Mar. 31, 2011) ...............................30–31

*Wells v. Winnebago Cty., Ill.,*
   820 F.3d 864, 867 (7th Cir. 2016) .................................................21–22

*Xinwa Chang v. MetroPlus Health Plan,*
   2014 WL 842635 (S.D.N.Y. March 4, 2014) ..................................26, 27

## Rules

Fed. R. Civ. P. 56 ......................................................................................1

## STATEMENT OF THE ISSUES

1.    Whether the district court, pursuant to Fed. R. Civ. P. 56, properly dismissed Versaggi's failure-to-accommodate claim when her alleged disability was not open, obvious, or apparent, when all of her requested "accommodations" involved limiting her interactions with a co-worker due to personal safety concerns, and when Versaggi did not have any direct contact with the co-worker after she asked KLS to limit any interactions with him. Alternatively, whether Versaggi's failure-to-accommodate claim is time-barred because she failed to file a timely charge of discrimination.

2.    Whether the district court properly granted summary judgment on Versaggi's disability-based hostile work environment claim when the primary instance of alleged "harassment" was criminal activity that KLS had no knowledge of until after it ended, and which was committed by a non-employee that KLS had no control over, and the only other instances of harassment were two innocuous write-ups issued years apart by different employees.

3.    Did the district court correctly dismiss Veraggi's retaliation and constructive discharge claims where: (1) Versaggi failed to plead

them in her complaint; (2) and both claims fail on their merits because Versaggi failed to show she was subject to an adverse employment action or that KLS deliberately made her working conditions so intolerable that a reasonable person in her shoes would have felt compelled to resign.

## INTRODUCTION

On November 21, 2016, Appellant-Plaintiff Lauren Versaggi ("Versaggi") first notified her then-employer, Appellee-Defendant KLS Martin, L.P. ("KLS") that she had been a victim of cyberstalking. ROA.505–06, ROA.558–61, ROA.567. Versaggi told KLS that the police had conducted an investigation and discovered the perpetrator was a woman named Cynthia Mendoza ("Mendoza"). *Id.* By the time Versaggi reported all of this to KLS, Mendoza had been arrested and the cyberstalking had stopped. ROA.503.

Versaggi also told KLS that she learned through the criminal investigation that Mendoza had been in a relationship with another KLS employee, Royal Smith. ROA.500. Mendoza's motives for targeting Versaggi remain unknown to this day. Smith and Versaggi did not work together on a regular basis, nor did they work in the same office. Rather, Versaggi and Smith were both remote employees, assigned to different sales territories, and their only interactions would have been limited to an occasional regional industry meetings or company meeting. ROA.542, ROA.484–85, ROA.487, ROA.488–96.

Upon learning this information, KLS interviewed Smith, who told KLS that he was unaware of, and had no involvement in, any cyberstalking and that he was no longer in a relationship with Mendoza. ROA.564–65.

Even though Smith and Versaggi's interactions were rare, because of his prior relationship with Mendoza, Versaggi asked KLS not to attend meetings where Smith would be present out of concern for her personal safety. ROA.567. KLS addressed these concerns and, as a result, Versaggi had no direct contact with Smith from the time she first expressed her discomfort to KLS about being around him in November 2016, until she resigned in March, 2018. ROA.486, ROA.524.

In January 2018, fourteen months after Mendoza's arrest, despite no further cyberstalking and no contact with Smith whatsoever, Versaggi asked to be excused from attending an upcoming national sales meeting because Smith would also attend. ROA.587. When KLS encouraged her to attend this meeting and reassured her that it could keep her separated from Smith, Versaggi produced a letter from a psychologist stating that she had developed Adjustment Disorder with Anxiety because of

Mendoza's cyberstalking. ROA.575, ROA.578, ROA.842. In response, KLS excused her from the meeting. ROA.519.

After resigning from KLS, Versaggi sued KLS for harassment and discrimination under the Americans with Disabilities Act. ROA.971–74. In granting summary judgment in favor of KLS, the district court saw Versaggi's 2016 requests for limited interaction with Smith for what they were—requests made out of concern for her personal safety, not requests for accommodations under the ADA. ROA.1071–74. The district court also recognized that Versaggi's hostile work environment claim (which was premised on the criminal misconduct committed by Mendoza and unknown to KLS until after Mendoza was arrested and the cyberstalking stopped) failed for numerous reasons, the most obvious being the fact that it was not based on any alleged disability. ROA.1074–80.

On appeal, Versaggi attempts to make her case by mischaracterizing the timeline of events and confusing the issues. But her brief is most notable for what it omits. From the outset, Versaggi completely ignores the fact that KLS reasonably accommodated her. ROA.1073–74. She had no direct contact with Smith after November

2016, when she first notified KLS of Mendoza's cyberstalking and asked KLS to limit her interactions with Smith. ROA.1073–74, ROA.1083.

This Court should affirm.

## STATEMENT OF THE CASE

### A. Factual Background

    1. *Versaggi's Employment with KLS.*

    In 2013, Versaggi began working for KLS as a cardiothoracic sales specialist; she was later promoted to the position of senior thoracic sales consultant ("TSC"). ROA.481, ROA.482–83. As part of KLS' sales force, her job duties involved meeting with surgeons to drive sales for a particular product line. ROA.965.

    Like many sales representatives, Versaggi covered a specific sales territory. ROA.542. In order to coordinate sales efforts to multi-facility providers, Versaggi e-mailed her weekly schedule to her supervisor and the two TSCs with adjacent sales territories to hers. ROA.542–43. She also attended voluntary weekly conference calls to stay up-to-date on important information like product availability and pricing. ROA.547–49.

    2. *Versaggi is Subjected to Cyberstalking by a Third-Party, Cynthia Mendoza.*

    In early January 2016, unbeknownst to KLS, Versaggi began receiving 50 to 100 unsolicited phone calls each day from an anonymous number. ROA.497; ROA.506. This went on for months. ROA.24. Several

months after the calls began, someone began posting photographs of Versaggi on social media and making disparaging comments about her. *Id.*

Versaggi went to the police and, in November 2016, they identified the person responsible for this behavior as a woman named Cynthia Mendoza ("Mendoza"). ROA.498–99. Mendoza was arrested and charged with stalking and cyberstalking; she ultimately pleaded no contest to the charges. ROA.501–02, ROA.504. The cyberstalking stopped when Mendoza was arrested. ROA.503.

Through the criminal investigation, Versaggi also learned that Mendoza had been in a romantic relationship with one of Versaggi's co-workers, Royal Smith ("Smith"). ROA.500. Because Versaggi and Smith were both remote employees assigned to different sales territories, they did not work together and their interaction at KLS was limited to an occasional regional industry meetings or company meeting. ROA.542, ROA.484–85.

3. *Versaggi Notifies KLS of Mendoza's Conduct and Requests Limited Interaction with Smith Due to Ongoing Criminal Investigation and Personal Safety Concerns.*

On November 21, 2016, Versaggi first notified KLS that she had been the victim of cyberstalking and of her belief that the perpetrator was Smith's girlfriend. ROA.505–06, ROA.558–61, ROA.567. KLS immediately interviewed Smith about what Versaggi had reported. ROA.562–63. Smith told KLS that he had no knowledge of, or involvement in, Mendoza's activities. ROA.564–65, ROA.555–57. Once Smith learned of Mendoza's conduct, he ended the relationship and had no further communication with Mendoza. ROA.551.

Versaggi told KLS that until Smith was cleared by law enforcement, she did not want to be around him because she was "frightened for her safety" and "very uncomfortable." ROA.508, ROA.463, ROA.567.

4. *KLS promptly addresses Versaggi's concerns; she has no direct contact with Smith during the remainder of her employment with KLS.*

In response to Versaggi's concerns, Versaggi's supervisor told her that she would not have to attend any meetings with Smith. ROA.569. KLS also instructed Smith not to have any contact with Versaggi. ROA.571, ROA.552–53, ROA.524. Additionally, KLS canceled an in-person regional sales meeting scheduled for December 2016, and prohibited Smith from

attending the national sales meeting in January 2017. ROA.569, ROA.571. Versaggi admitted that she had no direct contact with Smith after November 2016. ROA.486.

On December 5, 2016, Versaggi sent an email to her supervisor stating that she did not include the cities that she was traveling to on her weekly status reports because she did "not feel safe advertising [her] exact location on a group email." ROA.573. Versaggi's supervisor replied by telling Versaggi that she only had to submit her reports to him and the sales reps that she worked with—she did not have to send the reports to Smith. ROA.573, ROA.520–23.

In November 2017, one year after Mendoza's arrest, there was still no evidence that Smith was involved in Mendoza's stalking.[1] KLS' Human Resource Manager, Melissa Moe, contacted Versaggi to gauge her comfort level with attending a national sales meeting in January 2018. ROA.583. Moe expressed that, because Smith had not been arrested or charged in connection with Mendoza's behavior, the company felt that both she and Smith should be permitted to attend. *Id.* Moe

---

[1] Versaggi admits that Smith was never arrested or charged with any crime in connection with Mendoza's behavior. ROA.503, ROA.518.

reassured Versaggi that although Smith would be attending, the company would keep the two of them separated during the meeting. *Id.*

On December 6, 2017, Moe and KLS' Chief Financial Officer Kevin Bass ("Bass") spoke to Versaggi again about the upcoming meeting. ROA.583–84. Versaggi asserts that Moe and Bass spoke to her in an "offensive and humiliating" manner during this meeting that was inconsistent with "how you treat a star employee" by telling her she needed to "act like an adult," "grow up," and "move past this." ROA.509–12, ROA.516, ROA.967, ROA.517–18, ROA.770.

On January 8, 2018, Versaggi sent KLS an email requesting that she be excused from the national sales meeting because Smith would be attending. ROA.587. She attached a letter from a psychologist stating that she was being treated for Adjustment Disorder with Anxiety. *Id.*, ROA.776. The psychologist "strongly recommend[ed] that accommodations be made so that Ms. Versaggi may refrain from engaging in any employment related duties or meetings that include direct interactions with any individual directly affiliated and associated with the person being charged." *Id.*

KLS granted Versaggi's request to skip the meeting. ROA.519.

5. *Versaggi Resigns from KLS after all Sales Employees are asked to Sign Updated Non-Compete.*

On January 16, 2018, KLS sent its sales force an updated non-compete agreement. ROA.513, ROA.531–34. At the time, Versaggi admits that she was "actively seeking other employment" and "had been in communication with other companies" about employment opportunities. ROA.525–26. As she was already in talks with another company about taking a new position, Versaggi refused to sign the non-compete. ROA.535. On March 14, KLS notified Versaggi that she had to sign the agreement by March 21. ROA.534. Versaggi resigned on March 15 and began working for her new employer soon after. *Id.*, ROA.535–36. Versaggi's Charge of Discrimination.

On December 6, 2018, Versaggi filed a Charge of Discrimination (the "Charge") with the Equal Employment Opportunity Commission ("EEOC"). ROA.971–73. In her Charge, Versaggi identified November 21, 2016, as the earliest date on which discrimination took place, and March 15, 2018, as the latest date of discrimination. ROA.971. Versaggi did not characterize it as a continuing action. *Id.*

In the Charge, Versaggi claimed that she requested accommodations to avoid interaction with Smith on November 21, 2016,

and November 23, 2016, but she was: (1) required to keep attending weekly conference calls with Smith; and (2) required to disclose her work schedule to the entire region, despite reporting she was uncomfortable with sharing this information. *Id.*

**B. Procedural Background.**

Versaggi filed her original complaint against KLS in state court alleging claims under the ADA for failure to accommodate and disability discrimination.[2] ROA.26–27. On August 9, 2019, KLS timely removed this action to the United States District Court for the Southern District of Texas based on federal question and diversity jurisdiction. ROA.14–19. On July 30, 2021, KLS moved for summary judgment on all of Versaggi's claims. ROA.438–76. In her response, Versaggi argued that she was a victim of retaliation and constructive discharge despite the fact that she did not plead such claims in her Complaint.

After briefing, the district court granted KLS' motion for summary judgment, holding that (1) Versaggi failed to notify KLS of her alleged disability until January of 2018, and KLS accommodated the only request

---

[2] Versaggi's original complaint alleged that she was subject to harassment based on her gender. ROA.26–27.

she made after that date; (2) Versaggi failed to show that KLS' actions were sufficient to establish a hostile work environment based on her disability[3]; and (3) Versaggi failed to properly plead retaliation and constructive discharge. ROA. 1067–83. Versaggi is appealing all of these holdings.

## SUMMARY OF THE ARGUMENT

The district court decision dismissing Versaggi's failure-to-accommodate claim was correct because (1) her requested "accommodations" based on personal safety concerns were insufficient to put KLS on notice of any alleged disability, and (2) KLS did, in fact, accommodate Versaggi because she did not have any direct contact with the co-worker after she asked KLS to limit any interactions with him. The district court's dismissal of this claim can also be affirmed on alternative grounds, because she failed to file a timely charge of discrimination.

---

[3] The district court also dismissed Versaggi's gender-based hostile work environment claim because she failed to exhaust her administrative remedies. Because Versaggi does not challenge this ruling in her brief, this issue is waived. *See Audler v. CBC Innovis Inc.,* 519 F.3d 239, 255 (5th Cir. 2008).

Additionally, the district court correctly recognized that Versaggi could never prevail on her hostile work environment claim (which was premised on the criminal misconduct committed by a non-employee that KLS had no knowledge of until after the perpetrator was arrested and the cyberstalking stopped) because the instances of harassment she identified were not based on any alleged disability and failed to meet the "severe or pervasive" standard required. That holding was correct, and this Court should affirm it.

Finally, the district court held that Versaggi failed to plead retaliation and constructive discharge claims. This Court should affirm that ruling as well for the reasons set forth by the district court, and because both claims fail on their merits.

Accordingly, the district court's final judgment should be affirmed.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment de novo, applying the same legal standards as the district court. *Petro Harvester Operating Co., L.L.C. v. Keith*, 954 F.3d 686, 691 (5th Cir. 2020) (citations omitted). In addition, when a district court declines to construe arguments in response to a summary judgment motion as

implied amendments to a plaintiff's complaint, this Court reviews for abuse of discretion. See *Jackson v. Gautreaux,* 3 F.4th 182, 189 (5th Cir. 2021).

Further, this Court is not confined to review only those issues upon which the district court based its ruling. Indeed, this Court "may affirm a summary judgment on grounds other than those relied on by the district court." *F.D.I.C. v. Barton*, 233 F.3d 859, 865 (5th Cir. 2000) (citation omitted). Accordingly, while the district court properly granted summary judgment on certain grounds raised in KLS' motion, this Court may uphold the district court's grant of summary judgment on any of the other grounds KLS raised, as well. See *Id.*

# ARGUMENT

## I. The District Court Correctly Dismissed Versaggi's Failure-to-Accommodate Claim.

### A. Versaggi failed to file a timely charge of discrimination with respect to this claim.

While the district court chose to dismiss Versaggi's failure-to-accommodate claim on substantive grounds, there is an even easier route on which to affirm the judgment—it is time-barred.

Before a plaintiff may file a lawsuit under the ADA, she must exhaust her administrative remedies, which includes filing a charge of discrimination with the EEOC within 300 days after the alleged discriminatory act. See *Henson v. Bell Helicopter Textron, Inc.,* 128 F. App'x 387, 390 (5th Cir. 2005). A claim is time-barred if it is not filed within this time limit. See *Hood v. Sears Roebuck & Co.,* 168 F.3d 231, 232 (5th Cir. 1999) (citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982)).

This Court has held that an employer's failure to accommodate a disability constitutes a discrete act. See *Henson*, 128 F. App'x at 391. Each discrete act "constitutes a separate actionable 'unlawful

employment practice,'" that "'occurred' on the day that it 'happened.'" *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114 (2002). "A party, therefore, must file a charge within . . . 300 days of the date of the act or lose the ability to recover for it." *Id.* at 110.

Versaggi did not file her Charge until December 6, 2018. ROA.971– 73. Thus, any alleged discriminatory act that happened before February 9, 2018 (the 300th day before her Charge was filed) is time-barred. In the Charge, Versaggi complains that she requested accommodations to avoid interaction with Smith on November 21, 2016, and November 23, 2016. *Id.*; see also Appellant Brief, at pp. 18–19. She also claimed she was required to share her whereabouts, even though she told her supervisor on December 5, 2016 that she was uncomfortable doing so. ROA.971–73.

All three of these requested accommodations are easily identified discrete acts that happened in 2016—nearly two years before Versaggi's Charge was filed. *Id.* Because the accommodations that Versaggi claims KLS failed to provide to her fall outside the 300-day limitations period, her failure to accommodate claim under the ADA was untimely. This Court should affirm on this basis alone.

**B. Versaggi's failure-to-accommodate claim also fails on its merits.**

To establish a failure-to-accommodate claim, Versaggi must prove that: (1) she is a qualified individual with a disability, (2) the disability and its consequential limitations were known by KLS, and (3) KLS failed to make reasonable accommodations for such known limitations. See *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.,* 730 F.3d 450, 452 (5th Cir. 2013) (quoting 42 U.S.C. § 12112(b)(5)(A)). "[W]here the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." *Griffin v. United Parcel Serv., Inc.,* 661 F.3d 216, 224 (5th Cir. 1996) (citation omitted). Versaggi failed to meet this burden by proving her prima facie case for many reasons.

**1.** ***The district court correctly held that Versaggi's requests based on personal safety were insufficient to put KLS on notice of any alleged disability.***

The district court dismissed Versaggi's claim on its merits. First, the district court found that Versaggi's alleged disability was not "obvious

or apparent." ROA.1073. More specifically, the court correctly recognized that Versaggi's requests for her interactions with Smith to be limited were due to personal safety concerns. Second, Versaggi's alleged disability and its consequential limitations were not "obvious or apparent," and therefore not known by KLS prior to January 8, 2018, and the only requested accommodation Versaggi made after that date was granted. ROA.1073.

Versaggi complains that the district court's holding was in error because "formalistic magic words" are not required to invoke the ADA. Appellant Brief, at p. 32. By framing her argument in this way, Versaggi fails to confront the dispositive reason for the district court's holding, which was that her 2016 requests were "because of safety concerns." ROA.1073.

Indeed, in Versaggi's first email to KLS' Human Resources Department after notifying the company of Mendoza's behavior, she stated she was "frightened for her safety" and "very uncomfortable" being around Smith because of his relationship with Mendoza. ROA.567.

Likewise, in her email notifying her supervisor that she did not want to provide her location in weekly status reports, Versaggi stated she

"d[id] not feel safe advertising [her] exact location on a group email."
ROA.573    Versaggi's deposition testimony further confirmed that her
requests to KLS were solely out of concern for her personal safety—not
because she claimed she was suffering from any mental impairment.
ROA.507, ROA.509–10, ROA.514, ROA.517, ROA.519, ROA.522.

In her brief, Versaggi tries to overcome this fatal defect by
conflating her concerns about Smith, which arose after Mendoza's arrest,
with the feelings she told KLS she was experiencing before the police
discovered that Mendoza was responsible, while the cyberstalking was
still ongoing. ROA.838 ("With the combination of repeated no caller ID
phone calls and the [social media] threatening posts, I have been unable
to sleep . . . Thankfully, law enforcement interceded on my behalf to
identify the person responsible.").

Aside from the fact that Versaggi's feelings about being "unable to
sleep," "frightened," or even "anxious" were relayed to KLS in the context
of describing her experience before Mendoza's arrest (and also before
Versaggi told KLS about the cyberstalking), her comments fall far short
of the facts required to put KLS on notice of any impairment that would
qualify as a disability under the ADA. *See Wells v. Winnebago Cty., Ill.*,

820 F.3d 864, 867 (7th Cir. 2016) (holding that employee's references to her anxiety were insufficient to put a reasonable employer on notice that her anxiety was related to a disability); *Patton v. Jacobs Eng'g Grp., Inc.,* 874 F.3d 437, 444 (5th Cir. 2017) (citation omitted) ("Although the employee need not utter any magic words, she 'must explain that the adjustment in working conditions or duties she is seeking is for a medical condition-related reason'"); *Lanier v. Univ. of Texas Sw. Med. Ctr.*, 527 F. App'x 312, 318–19 (5th Cir. 2013) ("[C]omplaining of sleepiness while on-call would not trigger notice of a disability.").

Because the undisputed facts clearly establish that Versaggi failed to meet her burden to show that her impairment and resulting limitations were known to KLS prior to January 2018, the district court's decision dismissing her failure-to-accommodate claim should be affirmed.

### 2. *KLS reasonably accommodated Versaggi, and her brief does not even attempt to argue otherwise.*

Versaggi's opening brief also fails to explain—let alone cite to evidence in the record to support—how KLS allegedly failed to

accommodate her.[4] In other words, Versaggi does not identify a single accommodation that she claims she requested, but KLS failed to provide her. Nor could she.

In a failure-to-accommodate claim under the ADA, "the employee bears the burden of demonstrating that the employer failed to implement a reasonable accommodation." *Jiles v. Wright Med. Tech., Inc.,* 313 F. Supp. 3d 822, 841 (S.D. Tex. 2018) (citing *Riel v. Elec. Data Sys. Corp.,* 99 F.3d 678, 682 (5th Cir. 1996)). While the ADA does afford the right to a reasonable accommodation, it does not require a plaintiff be given her preferred accommodation. *E.E.O.C. v. Agro Distrib., LLC*, 555 F.3d 462, 471 (5th Cir. 2009).

Although the district court did not need to reach this issue, the undisputed facts demonstrate that Versaggi did not meet her burden of showing KLS failed to accommodate her. To begin with, Versaggi's claim that "KLS rejected her key requests—that Smith be kept away from her, both physically and by any other methods of other contact," is disingenuous and belied by the record. (Appellant Brief, at p. 11). It is

---

[4] To be sure, Versaggi's brief is replete with conclusory (and false) assertions that KLS "rejected" or "denied" various requests. None of these assertions are supported by any citation to the record.

undisputed that once Versaggi notified KLS that she was "uncomfortable" around Smith, KLS ensured that she did not have any type of direct communication or interaction with Smith, and she never saw Smith in person. ROA.486. By limiting any in-person or direct interactions between Smith and Versaggi, KLS met any purported obligation that it had under the ADA to accommodate her.

At most, Versaggi implies in her brief that KLS failed to accommodate her in two ways: 1) By requiring her to submit weekly status reports detailing her work schedule; and 2) by "requiring" her to participate in weekly conference calls with Smith. Appellant Brief, pp. 18–19. Both of these proposed accommodations are facially unreasonable as a matter of law.

Versaggi's request not to include her location on weekly status reports is facially unreasonable because it is undisputed that she was not required to disclose her location to Smith. ROA.573, ROA.520–23. Still, Versaggi testified during her deposition that she did not believe that it was reasonable for anyone (including her supervisor) to know the details of her weekly work schedule. ROA.523. But every employer has an obvious interest in knowing the work schedule of its employees. For a

sales representative like Versaggi, it was also important for other members of her sales team (which did not include Smith) to know this schedule so that they could coordinate their efforts, particularly to larger provider groups with facilities in several locations. ROA.542–43. Excusing Versaggi from having to notify "anyone" at KLS of her work schedule would eliminate this essential job function and is therefore unreasonable as a matter of law. See *Pegues v. Mississippi State Veterans Home*, 736 F. App'x 473, 476 (5th Cir. 2018) (citation omitted) (A proposed accommodation is unreasonable if it requires the employer to "exempt the employee from performance of an essential function of the job.").

Versaggi's assertion that she was required to participate in weekly conference calls fails for similar reasons.[5] The purpose of these calls was for members of management to provide updates on product development, production, availability, pricing, and related matters. ROA.547. On average, fifteen to eighteen employees attended the calls, which lasted

---

[5] Versaggi also failed to come forward with any evidence at the summary judgment stage to refute KLS' claim that weekly conference calls were voluntary. ROA.548. Nor did she establish that if (as she claims) the weekly conference calls were mandatory, she asked to be excused from the calls, but was "forced" to attend.

around 15 to 20 minutes in length. *Id.* at 547–48. Versaggi testified that during these calls she had to "hear [Smith's] voice." ROA.515.

Being able to work with one's co-workers is an essential job function. See *Salamone v. Cent. Piedmont Cmty. Coll.,* No. 3:18-CV-00298-GCM, 2020 WL 697842, at \*4 (W.D.N.C. Feb. 11, 2020) (collecting cases); see also See *Aldrup v. Caldera,* 274 F.3d 282, 287 (5th Cir. 2001) (affirming grant of summary judgment finding that an employee with depression caused by "the stress and anxiety of having to work with certain employees . . ." was not disabled). For that reason, any proposed accommodation that would involve preventing Versaggi from having to hear Smith talk to other people, is not reasonable as a matter of law.[6]

---

[6] The fact that Versaggi was only limited in her inability to work with Smith also provides an alternative ground for affirming dismissal of her failure–to–accommodate claim because it demonstrates that she was not a "qualified individual." *See Feist*, 730 F.3d at 452. Even after the passage of the Americans with Disabilities Amendments Act of 2008 (the "ADA Amendments Act"), courts have routinely held that physical or mental impairments caused or exacerbated by working with a specific co-worker or supervisor do not qualify as disabilities under the ADA. *See, e.g., Salamone,* 2020 WL 697842, at \*3 (W.D.N.C. Feb. 11, 2020) (holding that plaintiff's PTSD was not a disability because the only job function impacted by this impairment was working with her supervisors); *Rhodes v. Comcast Cable Communs. Mgmt., LLC,* Civil Action No. GLR-14-1824, 2016 WL 4376653, at \*8 (D. Md. Aug. 17, 2016) (finding that employee's bipolar disorder was not a disability because her only limitation was her inability to work with a particular group of dispatch representatives); *Xinwa Chang v. MetroPlus Health Plan,* No. 12 Civ. 3181(WHP), 2014 WL 842635 at \*6 (S.D.N.Y. March 4, 2014) (holding that depression and loss of sleep caused by relationship with supervisor and work environment did not rise to the level of a disability). In rejecting ADA claims premised on an inability to work with specific co-workers or supervisors, these courts reasoned that these plaintiffs

**II.    This Court should affirm the district court's grant of summary judgment on Versaggi's hostile work environment claim.**

The district court properly dismissed Versaggi's disability-based hostile work environment claim based on her failure to allege sufficient facts to satisfy the high legal standard for workplace harassment. ROA.1078.

While the convoluted and circuitous nature of Versaggi's hostile work environment theory makes it difficult to grasp, the thrust of the claim is that "KLS subjected her to a hostile work environment based on the continuous harassment, stalking and cyberstalking by Smith's girlfriend and, by implication, Smith." Appellant Brief, p. 42. She also takes issue with KLS' failure to investigate Smith's alleged involvement in Mendoza's cyberstalking. *Id.* Put simply, Versaggi's hostile work environment claim is premised on criminal activity that KLS had no

---

could only establish that they were unable to perform a single, particular job—not that they were prevented from performing a class of jobs or from working generally. *See, e.g.*, *Salamone,* 2020 WL 697842 at *3; *Rhodes*, 2016 WL 4376653 at *8; *Xinwa Chang*, 2014 WL 842635 at *6.

knowledge of until after it ended, which was committed by a non-employee that KLS had no control over.[7]

This argument lacks any basis in law or common sense. First, as the district court correctly recognized, Versaggi "d[id] not allege she was subject to unwelcome harassment based on a disability." ROA.1077. "Rather, Versaggi['s] conten[tion] [was] that the cyberstalking and harassment caused her disability." ROA.1077–78. This is insufficient to state a hostile work environment claim. See *Patton*, 874 F.3d at 445. Second, even assuming KLS had a duty under the ADA to investigate Mendoza's actions, the cyberstalking and harassment stopped following Mendoza's arrest and Versaggi did not have any contact with Smith after her request to be kept away from him. ROA.503. As the district court aptly found, "[s]ince the harassment stopped by the time Versaggi notified KLS of it, there was no further remedial action KLS could have taken." ROA.1078.

---

[7] As a general matter, an employer cannot be liable for harassment committed by a non-employee unless the plaintiff can show that the employer knew or should have known about the hostile work environment, yet allowed it to persist. *See Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 321-22 (5th Cir. 2019), *as revised* (Feb. 7, 2019).

On appeal, Versaggi completely fails to address the district court's holding. Indeed, Versaggi offers no additional evidence that would support other specific instances of harassment sufficient to rise to the level of actionable harassment, nor does she offer any substantive legal arguments to challenge the court's decision. See Appellant Brief, pp. 41–42.

Aside from Mendoza's conduct, the only other instances that Versaggi raises on appeal that supposedly contributed to a hostile work environment are what she calls "invented false complaints" about her. Appellant Brief, p. 42. These "false complaints" are, in reality, two different write–ups that Versaggi received from two different KLS employees, nearly two years apart. ROA.832; ROA.829–31.

The first "false complaint" is an unsigned employee counseling notice that was not delivered to Versaggi while she was employed by KLS. ROA.993–95. Versaggi admitted in her deposition that she only learned about this write-up during written discovery after she filed her lawsuit; thus, it cannot form the basis of her hostile work environment claim. ROA.1005–1006.

The second "false complaint" refers to a write–up that Versaggi received in March 2018 from Jonathan McMahan regarding her failure to comply with multiple KLS standards for conducting a laboratory session. ROA.829–31. Although Plaintiff contends that McMahan "was screaming like a crazy person" when he delivered the write-up, this isolated incident cannot support a hostile work environment claim. ROA.539–30.

These write-ups do not amount to a hostile work environment claim because they were isolated, mundane, and were issued by different individuals. ROA.829–32. As confirmed repeatedly by this Court, "[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to [actionable discrimination]." *Matherne v. Ruba Mgmt.,* 624 F. App'x 835, 839 (5th Cir. 2015) (citation omitted).

Even if these write-ups were sufficiently severe (which they are not), they cannot support a hostile work environment claim because there is nothing in the record that suggests either incident was based on Versaggi's alleged disability. *Strauss v. Potter*, No. CIV.A. No. H-08-1895, 2011 WL 1463582, at *8 (S.D. Tex. Mar. 31, 2011) (recognizing that

"instances of harassment that are not based on [one's membership in a protected group] must be identified and excluded from the analysis."). None of Versaggi's allegations meet the "severe or pervasive" standard required for a hostile work environment. This Court should affirm the District Court's ruling.

## III. This Court should affirm the district court's grant of summary judgment on Versaggi's retaliation and constructive discharge claims.

Versaggi failed to plead retaliation or constructive discharge. Not until her complaint faced a motion for summary judgment did she try to assert these claims in response to the motion. The district court granted summary judgment on these claims because they were not properly pleaded. ROA.1080–83. It did not abuse its discretion in doing so. But even if Versaggi had pleaded the claims, they fail as a matter of law. This Court should affirm.

### A. Versaggi's complaint does not plead retaliation or constructive discharge.

Versaggi's complaint only contained two causes of action: a hostile work environment claim based on sex and disability and a failure to accommodate claim based on disability. ROA.26–27.

Versaggi did not raise a retaliation or constructive discharge claim in her complaint. ROA.22–29. Faced with KLS' motion for summary judgment against the two claims she did raise, in response to the motion, she—for the first time—presented a retaliation and constructive discharge claim. ROA.726–28, ROA.728–29. The district court dismissed these claims because Versaggi failed to adequately raise them in her complaint. ROA.1080–83.

Versaggi now asks this Court to hold that the district court abused its discretion by not reading its summary judgment arguments as an implied motion to amend its complaint. But "it is [not] the duty of the trial court or the appellate court to create a claim which [the plaintiff] has not spelled out in his pleading." *Case v. State Farm Mut. Auto. Ins. Co.,* 294 F.2d 676, 678 (5th Cir. 1961). This Court disfavors such requests, especially when the plaintiff is not *pro se. Jackson*, 3 F.4th at 189 (holding that, because Plaintiffs were represented by experienced counsel who never moved to amend under Rule 15, their failure to do so forfeited the issue and prevented the district court from considering the merits of their summary-judgment argument).

As was the case in *Jackson*, experienced counsel has represented Versaggi at all stages of this litigation. See *Id*. Her failure to plead these claims forfeits them. The district court did not abuse its discretion in declining to read Versaggi's summary judgment arguments as implied amendments to her complaint. This Court should affirm.

### B. Even if Versaggi had pleaded a retaliation claim, it fails as a matter of law.

This Court should also affirm the district court's decision granting summary judgment on Versaggi's retaliation claim, which was fully briefed at the district court level, because it fails substantively. ROA.1080–81.

To support a claim for retaliation, Versaggi must prove, among other elements, that she suffered an "adverse employment action," as well as a "causal connection" between the alleged protected activity and adverse action. See *Dandridge v. Principal Mgmt. Grp. of N. Texas*, No. 3:19-CV-2118-B, 2021 WL 1688438, at *8 (N.D. Tex. Apr. 29, 2021) (providing elements of retaliation claim under the ADA). An adverse employment action typically involves a reduction in an employee's "'job title, grade, hours, salary, or benefits' or . . . 'a diminution in prestige or change in standing[.]'" *Paul v. Elayn Hunt Corr. Ctr.*, 666 F. App'x 342,

346 (5th Cir. 2016) (quoting *Stewart v. Miss. Transp. Comm'n,* 586 F.3d 321, 332 (5th Cir. 2009)).

In her brief, Versaggi points to three actions that she claims constitute adverse employment actions: (1) the "false write-ups" she received in February 2018, and the screaming incident with Versaggi's supervisor; (2) KLS' refusal to investigate Smith's involvement in Mendoza's misconduct; and (3) the fact that Versaggi had to remain on weekly phone calls with Smith and continue to disclose her physical location on weekly group emails. Appellant Brief, p. 40–41.[8]

What Versaggi loosely calls "the false 'write-ups' Versaggi suffered in February 2018" is actually a single write-up Versaggi received in March 2018. ROA.25–26. This "write-up" was an email from KLS' National Sales Manager, Jonathan McMahan, about Versaggi's failure to comply with multiple KLS standards for conducting a laboratory session. ROA.829–31.

---

[8] In her response to KLS' summary judgment motion, Versaggi alleged KLS' retaliation was falsifying an "unsigned warning notice" and the March 2018 write–up. ROA.713, ROA.829–31. Versaggi forfeits these arguments on appeal, likely because the "unsigned warning notice" is dated August 29, 2016—three months *before* Versaggi reported Mendoza's misconduct to KLS. ROA.832.

Even if Versaggi's description of this incident is true, the law is clear that such a reprimand, even if unjustified, does not constitute an adverse employment action and thus cannot support a claim of retaliation under the ADA. See, e.g., *King v. Louisiana,* 294 Fed. App'x 77, 85 (5th Cir. 2008) (holding that "allegations of unpleasant work meetings, verbal reprimands, improper work requests and unfair treatment do not constitute actionable adverse employment actions as . . . retaliation); *Grice v. FMC Techs., Inc.,* 216 Fed. App'x 401, 407 (5th Cir. 2007) (holding that unjustified reprimands are "trivial" and not materially adverse in the retaliation context); *DeHart v. Baker Hughes Oilfield Operations, Inc.,* 214 Fed. App'x 437, 442 (5th Cir. 2007) (holding that a written disciplinary warning for insubordination and being argumentative would not have "dissuaded a reasonable worker from making or supporting a charge of discrimination").

Versaggi's second purported adverse employment action is her dissatisfaction with KLS' investigation into Royal Smith's involvement in Mendoza's conduct. Again, Versaggi draws no connection between KLS' purported inaction and Versaggi's alleged disability. More fundamentally, Versaggi's brief fails to cite to any legal authority to

support her argument that KLS' supposed failure to adequately investigate Smith constitutes an adverse employment action against Versaggi.

The only remaining purported adverse employment action raised by Versaggi raises is her claim that she had to continue attending weekly telephonic conference calls with Smith" and continue to "disclose via email to the entire region the specific cities to which [she] would travel for work each day" ROA.24–25. But to be an adverse employment action, "the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred." *Seaman v. CSPH, Inc.,* 179 F.3d 297, 301 (5th Cir. 1999). The weekly phone calls and reports to management disclosing what city she was working in that particular week could not have been in retaliation because, aside from the fact they are completely innocuous, these activities predate Versaggi's disability and requests for accommodations.

Accordingly, even if Versaggi had actually pleaded a retaliation claim, the claim cannot survive summary judgment as a matter of law.

## C. Even if Versaggi had pleaded a constructive discharge claim, it too would fail as a matter of law.

This Court should also affirm the district court's decision granting summary judgment because it fails substantively. Specifically, in the Fifth Circuit, "constructive discharge requires a greater degree of harassment than that required by a hostile environment claim." *Haley v. All. Compressor LLC*, 391 F.3d 644, 650 (5th Cir. 2004) (citations omitted). Thus, to prove a constructive discharge claim, Versaggi must plead and show that KLS deliberately made her working conditions so intolerable that a reasonable person in her shoes would have felt compelled to resign. *See id.*

No such actions have been alleged here, let alone proven. Versaggi's brief is silent as to the conduct that this forms the basis for this claim. Before the district court, Versaggi argued she was constructively discharged when she (along with every other KLS employee) was given an ultimatum to sign a new non-compete agreement. ROA.729. Versaggi offered no case law or evidence to support her position that this alone would cause a reasonable employee to feel compelled to resign, nor can she. Taken as a whole, the evidence in the record cannot support a claim

for constructive discharge as a matter of law. KLS respectfully requests that the district court's grant of summary judgment on Versaggi's claim of constructive discharge be affirmed.

## CONCLUSION

The district court did not commit error when it held that Versaggi's failure to accommodate and hostile work environment claims failed as a matter of law. Nor did it abuse its discretion when it dismissed her retaliation and constructive discharge claims. This Court should affirm the district court's grant of summary judgment on all claims.

Respectfully submitted,

**BURR & FORMAN LLP**

*/s/ Emily H. Mack*
Emily Mack, TN BPR No. 31217
222 2nd Avenue South, Suite 2000
Nashville, Tennessee 37201
Telephone: (615) 724-3252
Facsimile: (615) 724-3352
emack@burr.com

*Counsel for Defendant-Appellee,*
*KLS Martin, L.P.*

# CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2022, I electronically transmitted the attached Brief of Appellant to the Clerk of the Court of the United States Court of Appeals for the Fifth Circuit using the Court's ECF System, which sent a Notice of Electronic Filing to the attorneys of record who have consented in writing to accept this notice as service of this document by electronic means. I further certify that I have sent a copy of this document via United States First Class Mail, postage prepaid, to the attorneys of record.

/s/ Emily H. Mack
Emily H. Mack

# CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,792 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in Century Schoolbook (Scalable) 14pt for text and Century Schoolbook (Scalable) 12pt for footnotes.

/s/ Emily H. Mack
Emily H. Mack