No. 21-20547

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

LAUREN VERSAGGI,

Plaintiff—Appellant

v.

KLS MARTIN, L.P.,

Defendant—Appellee

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION
4:19-cv-02977

---

**APPELLANT'S REPLY BRIEF**

---

Raffi Melkonian
WRIGHT CLOSE & BARGER, LLP
One Riverway, Suite 2200
Houston, Texas 77056
(713) 572-4321
(713) 572-4320 (Fax)

**COUNSEL FOR PLAINTIFF—
APPELLANT**

1

# CERTIFICATE OF INTERESTED PERSONS

No. 21-20547

LAUREN VERSAGGI,

Plaintiff—Appellant

v.

KLS MARTIN, L.P.,

Defendant—Appellee

Counsel of Record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| PLAINTIFF—APPELANT | COUNSEL |
|---|---|
| **LAUREN VERSAGGI** | Raffi Melkonian<br>Wright, Close & Barger LLP<br>1 Riverway Drive<br>Houston, TX 77056<br>713-572-4321<br><br>Victor James Versaggi<br>Domengeaux Wright Roy Edwards & Colomb, L.L.C.<br>556 Jefferson Street<br>Lafayette, LA 70501<br>337-233-3033 |

| DEFENDANT—APPELLEE | COUNSEL |
|---|---|
| **KLS MARTIN, L.P.** | Emily H. Mack<br>Marcel L. Debruge<br>Burr & Forman, L.L.P.<br>Suite 3400<br>420 N. 20th Street<br>Birmingham, AL 35203<br><br>Jana H. Woelfel<br>Clark Hill, P.L.C.<br>Suite 2300<br>909 Fannin Street<br>Houston, TX 77010<br><br>Zachary C. Lawson<br>Burr & Forman, LLP<br>222 Second Avenue, S. Suite 2000<br>Nashville, TN 37201 |

/s/ *Raffi Melkonian*
Raffi Melkonian

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................ 2

TABLE OF CONTENTS ............................................................. 4

TABLE OF AUTHORITIES ........................................................ 5

INTRODUCTION .................................................................... 7

REPLY STANDARD OF REVIEW ............................................... 9

ARGUMENT ........................................................................ 11

  I. The district court erred in dismissing Versaggi's ADA accommodation claim. ......................................................... 11

    A. Versaggi informed her employer of her disability as of early 2016. ......................................................... 12

    B. KLS did not accommodate Versaggi. ........................... 16

    C. Versaggi's claims are not time-barred. ........................ 20

  II. The district court erred in granting summary judgment on Versaggi's retaliation and constructive discharge claims ................................................................................. 25

  III. The district court erred in granting summary judgment on her ADA hostile work environment claims. ................... 28

CONCLUSION ...................................................................... 29

CERTIFICATE OF SERVICE .................................................... 31

CERTIFICATE OF COMPLIANCE ............................................ 32

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Aldrup v. Caldera,*
274 F.3d 282 (5th Cir. 2001) .......................................................... 19, 20

*Binh Hoa Le v. Exeter Finance Corp.,*
990 F.3d 410 (5thCir. 2021) ............................................................ 21

*Davis v. Fort Bend Co.,*
139 S. Ct. 1843 (2019) ...................................................................... 22

*EEOC v. Chevron Phillips Chemical Co., L.P.,*
570 F.3d 606 (5th Cir. 2009) ............................................................ 19

*EEOC v. LHC Group, Inc.,*
773 F.3d 688 (5th Cir. 2014) ............................................................ 19

*EEOC v. Vicksburg Healthcare, L.L.C.,*
663 Fed. App'x 331 (5th Cir. 2016) .................................................. 18

*Frank v. Xerox Corp.,*
347 F.3d 130 (5th Cir. 2003) ............................................................ 24

*George v. SI Group, Inc.,*
___F. 4th ___, 2022 WL 1817714 (5th Cir. June 3, 2022) .................. 10

*Griffin v. UPS,*
661 F.3d 216 (5th Cir. 2011) ............................................................ 19

*Haley v. Alliance Compressor LLC,*
391 F.3d 644 (5th Cir. 2004) ............................................................ 28

*Landry's, Inc. v. Insurance Co. of the State of Pennsylvania,*
4 F. 4th 366 ...................................................................................... 10

*Lanier v. University of Texas Sw. Med. Center,*
527 Fed. App'x 312 (5 Cir. 2013) ..................................................... 15

*Mitchell v. Goings, et. al.,*
      ___ F. 4th ___, 2022 WL 2070874 ......................................................22

*Pa. State Police v. Suders,*
      542 U.S. 129 (2004)............................................................................27

*Paton v. Jacobs Engineering Group, Inc.,*
      874 F.3d 437 (5th Cir. 2017)..............................................................16

*Pegues v. Misssissipi State Veterans Home,*
      736 Fed. App'x 473 (5th Cir. 2018)....................................................18

*Rhodes v. Comcast Cable Communications Management, LLC,*
      2016 WL 4376653 (D. Maryland, 2016) ............................................21

*Rogers v. McDorman,*
      521 F.3d 381 (5th Cir. 2008)..............................................................22

*Salamone v. Cent. Piedmont Cmty. Coll.,*
      No. 3:18-CV-00298-GCM, 2020 WL 697842 (W.D.N.C. Feb. 11, 2020)
      ..............................................................................................................20

*U.S. v. Nkuku,*
      602 Fed. App'x 183 (5th Cir. 2015)....................................................23

*Wells v. Winnebago Cty. Ill.,*
      820 F.3d 864 (7th Cir. 2016)..............................................................16

*Willis v. Cleco Corp.,*
      749 F.3d 314 (5th Cir. 2014)........................................................26, 27

*Xinwa Chang v. MetroPlus Health Plan,*
      No. 12 Civ. 3181, 2014 WL 842635 (S.D.N.Y. 2014) ..........................21

## Federal Rules

FED. R. CIV. P. 8(c) ..................................................................................23

FED. R. CIV. P. 8(c)(1)..............................................................................22

## INTRODUCTION

One of KLS's refrains is that Versaggi has not cited a case with exactly these facts and claims. True. That is because there are few cases in any context as extreme as this one. KLS admits that Ms. Versaggi was criminally harassed and stalked for almost a year. KLS also agrees that the stalker somehow found her new phone number when she tried to stop the abuse. How? Because the criminal stalker was Royal Smith's girlfriend—that is, her own coworker's live-in-girlfriend. And yet, despite these startling facts, KLS did almost serious nothing in response. It conducted no investigation of Smith's involvement, ROA.778; did not accommodate Versaggi by isolating her from Smith; and it finally told Versaggi that everyone should "move on." ROA.796. KLS executive leadership even dismissed Versaggi as a troublemaker and said that "she should no longer be employed." ROA.779 (Declaration of Cherie Johnson). Facts like these should be presented to a jury, not disposed of on summary judgment.

KLS's legal arguments in response are nearly all based on grounds the district court did not reach. While sometimes this Court can affirm on alternative grounds, this is not such a case. For one thing,

many of the alternative grounds (such as whether Versaggi has set out a constructive discharge claim on the merits) are highly fact-and-case specific. A district judge should review such claims before this Court does so. Moreover, Versaggi's initial trial counsel was afflicted with a serious illness and hospitalized during critical moments of this case. This crucial disruption too supports a straightforward reversal and remand for further litigation rather than stretching to affirm on alternative grounds.

A final note: KLS places much emphasis on its claim that Versaggi's ADA reasonable accommodation claim is untimely. That defense was waived below because it was not raised in its answer (failure to exhaust was, but not timeliness). At minimum, remand is necessary to sort through those issues. But even if this Court disagrees on waiver, KLS's failures to accommodate here were part of a continuing scheme to refuse to accommodate Versaggi. Properly understood, Versaggi's EEOC Charge was timely filed.

## REPLY STANDARD OF REVIEW

Appellees' brief mainly seeks affirmance on grounds that the district court did not reach. Versaggi has carefully responded to all those arguments and she prevails even if this Court considers them. Still, this Court should decline Appellants' invitation to resolve many questions for the first time on appeal. While this Court has that authority, and can exercise that authority on occasion, this Court has "no obligation to do that." *George v. SI Group, Inc.*, ___ F. 4th ___, 2022 WL 1817714, at *13 (5th Cir. June 3, 2022) (Oldham, J., concurring in judgment in part and dissenting in part) (collecting cases). This is because this Court is a "court of review, not of first view." *Landry's, Inc. v. Insurance Co. of the State of Pennsylvania*, 4 F. 4th 366, 372, n. 4 (5th Cir. 2021). There is great value in initial analysis by a district court. Thus, if this Court finds error in the grounds reached by the district court, it should reverse and remand.

If this Court needs any specific reason to decline to stretch beyond the district court's judgment, one is presented by the procedural posture below. Although the appellate record does not reveal the full scope of the issues, it does show that Versaggi's initial trial counsel became

incapacitated, suffered a "serious hospitalization," and was unable to take full charge of Versaggi's representation just weeks before KLS moved for summary judgment. ROA.405. The situation became so grave that Versaggi's father had to substitute into the case to try to preserve his daughter's rights just two months later. ROA.1026. Besides its normal reluctance to step in front of the district court, that unusual context is exactly the kind in which this Court should forbear from prejudging issues not fully resolved below.

## ARGUMENT

### I. The district court erred in dismissing Versaggi's ADA accommodation claim.

KLS makes three arguments on Versaggi's ADA claim, all of them incorrect. *First*, KLS tries to defend the district court's ruling on its knowledge of Versaggi's disability mischaracterizing Versaggi's 2016 complaints as mere "safety concerns." Br. at 20. This misunderstands the evidence. KLS's own HR manager admits she knew about Versaggi's emotional condition throughout this period. That emotional condition, cause by the year-long stalking crimes committed against her, was her ADA disability. That she also had safety concerns changes nothing.

*Second,* KLS claims (as an alternative ground for affirmance, which this Court should not reach) that Versaggi was in fact accommodated. This is not true. Although some small accommodations were made—for example, Royal Smith was not included on certain emails—KLS did not accommodate several of Versaggi's most important accommodation requests. This included the modest steps she asked for to make sure that she did not have to interact with Smith on the phone, and to ensure that Smith did not know where she was working.

*Finally*, KLS asserts that Versaggi's November and December 2016 accommodation requests were untimely because she filed her charge of discrimination with the EEOC more than 300 days after those incidents. This argument too should not be entertained at first instance by this Court. That is fact-specific argument best suited for a district court at the first instance. But if it is, KLS waived this affirmative defense by not including it in its answer or moving to dismiss. In addition, the argument fails on the merits the merits because KLS's failures to accommodate Versaggi were part of a continuing violation against her rights.

### A.    Versaggi informed her employer of her disability as of early 2016.

As explained in Versaggi's opening brief, the only issue the district court decided for her ADA accommodation claim was whether Versaggi properly informed her employer of her disability and requested accommodation. *See* Versaggi Br. 15, describing ROA.1073-74. The district court erred on that point for the reasons explained in the opening brief, and thus the judgment should be reversed. *See* Versaggi Br. at. 19-23. In particular, the district court's belief that Versaggi had "conceded" something about this point was simply incorrect.

KLS responds that Versaggi complained to KLS only about feeling unsafe because the stalker was at large, not any kind of disability arising from the fear and terror of the experience. Br. at 20-21. That, in KLS's view, is different than informing KLS of a disability. This argument is hard to credit—and even more so as a reason to grant summary judgment.  In fact, Versaggi made clear to KLS that she was suffering extreme mental distress from the stalking and cyberstalking and the consequences of these criminal acts, both before and after Mendoza's arrest. The best evidence is the testimony of Cherie Johnson, KLS's own HR manager, who testified that she was "aware" of Versaggi's "mental state" and "perceived emotional condition" during 2016 and 2017 (the very time periods where KLS now says it did *not* know about Versaggi's disability). ROA.780. KLS does not dispute this evidence. How did Johnson know about Versaggi's emotional condition? Because, as detailed in Versaggi's opening brief, Versaggi told KLS repeatedly about her many symptoms of disability. *See* Versaggi Br. at 24-25. To be sure, Versaggi *also* suffered from physical fear of being hurt, but the fact that she had multiple problems arising from the extraordinary harassment she had suffered is hardly a surprise.  KLS's

theory proves too much. Under its rule, any reporting that included reference to physical fear would somehow cancel out credible reporting of disability. For example, KLS seizes on Versaggi's reporting of being "frightened" as proof she was not also reporting a disability. *See* Br. at 20, *citing* ROA.567. The very same email KLS cites references needing an "accommodation," notes that the cyberstalking experience has "deeply affected my life" and confesses that she cannot sleep. ROA.567. All of those are proof that Versaggi reported a disability (and Cherie Johnson, the recipient, understood her report, as noted above). KLS's theory cannot be the law. At most, this is an argument for a jury to resolve.

The cases KLS cites do not move the needle. In each, the employer did not know and could not have known about the disability. In *Lanier v. University of Texas Sw. Med. Center*, 527 Fed. App'x 312, 318-319 (5 Cir. 2013), for example, a plaintiff complained of being sleepy on the job. She asserted, later, that she had a sleep disorder. *Id.* But she worked in a job that required an occasional 24-hour on-call period. Everyone was sleepy. *Id.* In that context, it makes perfect sense that the *Lanier* employer could not have guessed the plaintiff was suffering from a

disability. This, by contrast, is obviously not a case where the ubiquity of the plaintiff's symptoms made it hard to know the plaintiff was disabled.

The Seventh Circuit case KLS cites, *Wells v. Winnebago Cty. Ill.*, 820 F.3d 864, 867 (7th Cir. 2016) is similarly inapt. There, an employee of the Court system was suffering anxiety *because of* a stressful job. In that context, a reasonable employer could easily have concluded the job caused her stress—the plaintiff did not "link" her generalized anxiety to a disability. Further, the plaintiff provided *no* medical information whatsoever, not even during the litigation, linking the conditions of her work to a medical condition. Again, the facts here are very different. Not only did KLS know about Versaggi's emotional condition, she eventually provided medical evidence as well. ROA.844-46.

*Paton v. Jacobs Engineering Group, Inc.*, 874 F.3d 437 (5th Cir. 2017) is also not to the contrary. In that case, there was no reason for the employer to have known that the plaintiff "identified his sensitivity to noise as a medical condition," and the medical condition the employer did know about (a stutter) has nothing to do with the condition. *Id.* at 444. Again, that is not true here. There is direct testimony that

although magic words were not used, KLS knew about Versaggi's mental condition.

## B. KLS did not accommodate Versaggi.

KLS next asserts that it adequately accommodated Versaggi. Again, to begin, this was *not* the basis of the district court's judgment. This is an alternative ground for affirmance which this Court need not and should not reach at the first instance.

In any event, the arguments KLS raises are incorrect. First, as to the email list, KLS asserts that Versaggi wanted *no one* (not even her supervisors) to know where she was working, and that this was unreasonable. Br. at 25. A threshold point: there is nothing unreasonable about a woman who has suffered a year of stalking asking for privacy during the time she believes an investigation is taking place. Versaggi did not ask for Royal Smith to be fired, or disciplined, or moved to some other location—just that KLS ensure *no contact* between Smith and Versaggi and make sure that Smith could not figure out where Versaggi was.

KLS's claim is also factually wrong. What Versaggi wanted was that her location not be broadcast to the entire sales team on the weekly

team email. ROA.910; ROA.768 (noting that Versaggi did not want her location broadcast "to the rest of the sales staff."). Her supervisor, Monte Gardner, rejected the requested accommodation because Royal Smith was not technically copied on the email. ROA.910. But as Versaggi explained in her deposition, that was not a sufficient or reasonable accommodation. After all, Versaggi did not know and could not have known the extent of the conspiracy against her. KLS had done no investigation, and Versaggi had indications that perhaps other people too had fed Mendoza information. ROA.768 ("I said I did not feel comfortable regardless because we did not know who was affiliated with this [i.e., the harassment] at this time"). Like the defendant in the case KLS cites, *Pegues v. Misssissipi State Veterans Home*, 736 Fed. App'x 473, 476 (5th Cir. 2018), KLS can present its theory that having the entire team know where Versaggi was at any time was an essential job function, but at this stage there is a clear factual dispute on that point. *See also EEOC v. Vicksburg Healthcare, L.L.C.*, 663 Fed. App'x 331, 335 (5th Cir. 2016) (concluding that summary judgment about whether light lifting duty was an "essential function" of plaintiff's job was precluded by fact issues).

17

Second, KLS claims that the accommodation Versaggi requested that she be kept off team calls with Smith was unreasonable as a matter of law. Br. at 25. Even if that were so, the law requires the employer to participate in a "good faith" and "interactive" process to find an accommodation that works. *Griffin v. UPS*, 661 F.3d 216, 225 (5th Cir. 2011). This process requires a "meaningful dialogue," *EEOC v. Chevron Phillips Chemical Co., L.P.*, 570 F.3d 606, 622 (5th Cir. 2009). With no evidence the employer engaged in such a process in the face of the request, summary judgment is inappropriate. *See EEOC v. LHC Group, Inc.*, 773 F.3d 688, 699 (5th Cir. 2014). Here, the record shows only that Versaggi's request was denied and, ultimately, KLS believed it was unfair to impose restrictions on Royal Smith. ROA.795 (discussing the national sales team meeting).[1]

Nor does the case KLS cites help. *Aldrup v. Caldera*, 274 F.3d 282 (5th Cir. 2001), which KLS relies on for this argument, deals with a very different situation. The question there was whether the plaintiff was disabled at all. *Id.* at 287. This Court sensibly pointed out that if

---

[1]    KLS implies the weekly team meetings were not mandatory, and so, presumably, Versaggi could just have skipped them. The record evidence belies this. ROA.781. ("The weekly TSC Conference Calls were not optional."

the disability was caused by working with certain employees, then it is not a disability at all. *Id.* The situation here is different. There is no question (not even KLS seems to dispute it) that Versaggi was disabled by the incredible stress and danger she was put under. Being isolated from Royal Smith was one of the small concessions KLS could have made to help relieve her some of that disability. The other cases KLS cites are to the same effect: they go to the proof of Versaggi's *disability*, not the scope of the accommodation. *See Salamone v. Cent. Piedmont Cmty. Coll.*, No. 3:18-CV-00298-GCM, 2020 WL 697842, at *4 (W.D.N.C. Feb. 11, 2020) (discussing whether the plaintiff was disabled).

KLS also faces a procedural hurdle with this argument. A case may be affirmed only on alternative grounds *presented to* the district court. KLS never made the argument below that Versaggi's requested accommodations were unreasonable *because* they required her to be separated from one employee. KLS did cite these same cases, but in the in support of its quite different argument that Versaggi's condition was not even a disability. *See, e.g.*, ROA.459-461.

The Court should also reject the argument that Versaggi was not disabled because she was limited only in working with a single

individual. Of course, an argument raised only briefly in a footnote is abandoned. *See Binh Hoa Le v. Exeter Finance Corp.*, 990 F.3d 410, n. 7 (5th Cir. 2021) (citing cases). But even if this Court considers that argument, it is inapposite here. The distinction is that in most of the cases KLS cites, the disability was *caused* by the employee the plaintiff wanted to exclude. That is not the case here, as noted above. What Versaggi needed was isolation from one particular person as the accommodation for her disability. That is a different thing, and susceptible to quite different defenses.[2]

### C.     Versaggi's claims are not time-barred.

KLS next argues that Versaggi's claims were time-barred because she did not file a charge of discrimination within 300 days after each allegedly discriminatory act. Br. at 17-18. As explained above, this too was not the district court's basis for ruling. This Court explained just this week that issues surrounding exhaustion-type arguments are particularly inappropriate for this Court to decide in the first instance.

---

[2]  In *Rhodes v. Comcast Cable Communications Management, LLC*, 2016 WL 4376653 (D. Maryland, 2016), the only major life activity in which the plaintiff was limited was working. But she was only limited in that she could not work with a single person in a single location. *Id.* at *8-9. Again, that is not the situation here, where work is not the major life activity that is limited. The same is true of *Xinwa Chang v. MetroPlus Health Plan*, No. 12 Civ. 3181, 2014 WL 842635 (S.D.N.Y. 2014).

*See Mitchell v. Goings, et. al.* ___ F. 4th ___, 2022 WL 2070874, at \*3
(citing cases holding that [t]he issue of … exhaustion of []
administrative remedies is … appropriate for the district court to decide
in the first instance").

*The defense was forfeited.* If this Court does consider the
timeliness argument, KLS's argument is forfeited. Time bar defenses
arising out of administrative law are, at most, waivable claims-
processing rules. *See Davis v. Fort Bend Co.,* 139 S. Ct. 1843, 1850
(2019) (holding that Title VII's charge filing requirement is not
jurisdictional). An affirmative defense is waived if it is not
"affirmatively stated" in the party's answer. FED. R. CIV. P. 8(c)(1). And
that pleading must be specific about what *kind* of defense is raised so
that the plaintiff has "fair notice of the defense that is being advanced."
*Rogers v. McDorman*, 521 F.3d 381, 385-86 (5th Cir. 2008) (cleaned up).

Under those rules, KLS's limitations or time bar defense is
forfeited. Though KLS pleaded 23 affirmative defenses in its Answer,
ROA.111-114, none of them is a time-bar or the statute of limitations.
KLS also did not move to dismiss under Rule 12(b)(6) based on a time
bar. Instead, KLS waited until July 2021, two full years into the

21

litigation, to raise this defense for the first time. *See Leboef v. Island Operating Co.*, 342 Fed. App'x 983, 984 (5th Cir. 2009), *citing Funding Sys. Leasing Corp. v. Pugh*, 530 F.2d 91, 96 (5th Cir. 1976) for proposition that once an affirmative defense is waived by not including it the answer, the defendant "cannot revive the defense in a memorandum in support of a motion for summary judgment").

KLS could argue that it pleaded "failure to exhaust" in its answer. But failure to exhaust and a time-bar are different affirmative defenses. *See, e.g.*, *U.S. v. Nkuku*, 602 Fed. App'x 183, 185 (5th Cir. 2015) (differentiating between those two types of defenses in resolving a Rule 60(b) motion in a criminal case). *See also* FED. R. CIV. P. 8(c) (listing "statute of limitations" as an independent federal affirmative defense). When KLS pleaded failure to exhaust, it was talking about the claims the district court found were not properly within the charge—not anything to do with timing.

Nor is this a case in which KLS could not have known about the supposed untimely claims at the time of its answer or in preparation for a motion to dismiss. The charge itself explains the whole story of KLS's

failures to accommodate, starting in November 2016. ROA.800. The state court petition does the same. ROA.24-25.

If KLS believed that some of Versaggi's ADA claims were untimely, it should have preserved that affirmative defense by raising it in its original answer, or amending its answer, or by moving to dismiss. By waiting until summary judgment to raise the issue, KLS caused Versaggi prejudice by changing how this case could have been litigated during the discovery period and at the pleading stage. Thus, the defense was forfeited.

*If this Court disagrees about forfeiture, Versaggi did timely file her charge based on KLS's continuing violations of law.* Second, on the merits, the claims here are timely because KLS's actions were part of a continuing pattern of failure to accommodate that stretched well-into the 300-day period. This Court has held that "a plaintiff may complain of otherwise time-barred discriminatory acts if it can be shown that the discrimination manifested itself over time, rather than in a series of discrete acts." *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003). KLS implies that this continuing violation doctrine does not apply to accommodation claims under the ADA. Br. at 17-18. Notably missing

from that argument is any binding citation to a Fifth Circuit case holding that this is the rule or discussing the scope of the rule. Other courts have held, for example, that the continuing violation applies in accommodation cases, at least until the employer has made clear that any further attempts to secure an accommodation are futile. *See Richards v. CH2M Hill, Inc.*, 29 P.3d 175, 177 (Cal. 2001) (discussing state law).[3]

Even if this were the rule, that would apply only where there is a single discrete act of harm arising from the accommodation. That is not the case here. Take, for example, the accommodation Versaggi first asked for in 2016, that she not be required to include the cities where she was working in emails to the entire group. These were "weekly" status emails that all sales consultants were expected to be on (including Smith). ROA.768 (Versaggi deposition); ROA.781 (Reynolds Declaration). Each time Versaggi was forced to send her information to the group was another part of the continuing violation. Similarly, the sales team calls were *mandatory* and *weekly* calls. That is why KLS's HR Manager stated in her Declaration that throughout the time she

---

[3]    Again, Versaggi notes that resolving this thorny question of federal law is not necessary in this appeal, because the district court did not reach any such question.

worked at KLS, Versaggi "continued to ask for protection and accommodations," ROA.779. This was no discrete act that triggered the 300-day limitations periods.

## II.  The district court erred in granting summary judgment on Versaggi's retaliation and constructive discharge claims.

KLS barely disputes that the district court should have construed Versaggi's complaint as pleading both retaliation and constructive discharge. Br. at 31 (retaliation); Br. at 33 (Constructive discharge). KLS neither contends with the fact that the Complaint specifically mentions retaliation, even if it does not break it out into a separate cause of action, nor does KLS dispute that courts should construe oppositions to summary judgments as motions to amend the pleadings. Given KLS's failure to even dispute these arguments, the judgment below should be reversed. Even more so than the other causes of action, the district court did not pass on these claims in any way. The case should be remanded for a first view.

*Retaliation.* The Court should stop there. But if it does consider the merits on both retaliation and constructive discharge, KLS's arguments fail. Take retaliation first. KLS asserts that the false write-ups Versaggi suffered (one of which was in February 2018) were

insufficient to support a claim for retaliation. This is incorrect, both factually and legally. Factually, the record shows at least two formal warnings that were allegedly placed in her file. ROA.530; ROA.832. The second is an unsigned and undated warning notice that Versaggi found during discovery, which accuses Versaggi of, among other things, of "lack of willingness to work openly and effectively with colleagues." ROA.832. Although KLS's decision to purge Versaggi's employment records makes it difficult to probe the context of this warning, the context and timing show the strong link to Versaggi's requests for disability accommodations. This argument is buttressed by KLS's internal belief that Versaggi was a "troublemaker." ROA.779.

Legally, KLS appears to believe there is a flat rule that a "reprimand … does not constitute an adverse employment action." Br. at 35. But this statement ignores *Willis v. Cleco Corp.*, 749 F.3d 314, 318 (5th Cir. 2014), a published decision of this Court directly holding that sometimes a reprimand can be enough to support a retaliation claim. A jury can decide here whether these reprimands were adverse employment actions. If *Willis* requires some sort of plus factor, we have that here. Not only was Versaggi reprimanded, but at least one high-

ranking KLS executive leader believed she was now a troublemaker and should no longer be employed. ROA.779. That is exactly the kind of pretext that *Willis* mentioned as supporting the adverse employment action claim. *Id.* at 318 (stating that "we are going to terminate" the plaintiff [referred to using a racial epithet] because of his protected activity). This is especially true when combined with the other indicia of retaliation, including KLS's refusal to help Versaggi and to investigate Smith for being involved in the harassment. The unpublished cases KLS cites stand for nothing more than the proposition that in some circumstances, bare reprimands are not retaliation. At best for KLS, those cases are evidence the district court should be given the first opportunity to analyze these questions to apply the nuanced review this Court has demanded.

*Constructive discharge.* Versaggi was constructively discharged because her working conditions were "so intolerable that a reasonable person would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004). Consistent with that law, Versaggi testified that she quit precisely because of the "intolerable" working conditions to which she was exposed. ROA.766. Specifically, these were the failures

27

to accommodate her reasonable requests for accommodation, KLS's failure to investigate Smith's involvement in the cyberstalking and harassment, the false admonishments she received, and KLS's clear attitude to Versaggi that she was a "troublemaker" who needed to get over her trauma so that everyone could move on. ROA.779. *Haley v. Alliance Compressor LLC*, 391 F.3d 644 (5th Cir. 2004), is not to the contrary. The Court in that case was clear that constructive discharge is "case-specific" and "fact-specific." *Id.* at 649. Certainly, where the district court has not passed on the claims, this Court should not. But in any event, a situation where an employee has been the victim of criminal acts, and where the employer blames the employee, the possibility of a constructive discharge claim is one way that employee can seek relief. This is not a case involving mere "micromanagement" like *Haley*.[4]

## III. The district court erred in granting summary judgment on her ADA hostile work environment claims.

KLS's response on the hostile work environment claims under the ADA is simply that the facts described in the opening brief and above

---

[4]     Further, although this point makes no difference to the resolution of this case, KLS is wrong to tell the Court that one year after Mendoza's arrest there was still no evidence that Smith was involved in the stalking and cyberstalking. Criminal court proceedings were ongoing until nearly January 24, 2019, and KLS would have known that had it not refused to cooperate fully with law enforcement.

cannot satisfy the standard. But the allegations are straightforward, not "convoluted." KLS knew that its employee had been stalked for a year by the live-in girlfriend of one of its other employees. KLS further knew that Versaggi had become disabled because of this harassment. Instead of acting to remedy Versaggi's distress, KLS subjected her to a hostile work environment by stonewalling even the police investigation into Royal Smith, and then creating false allegations to force Versaggi out of her job. This is in addition to the facts set forth in the constructive discharge part of this brief. Versaggi asserts that this discrimination against her was based on her disability—there was no other reason a top employee like Versaggi would have been treated in this way.

## CONCLUSION

The judgment below should be reversed, and the case remanded for trial.

Respectfully submitted,

*/s/ Raffi Melkonian*
Raffi Melkonian
WRIGHT CLOSE & BARGER, LLP
One Riverway, Suite 2200
Houston, Texas  77056
(713) 572-4321

(713) 572-4320 (Fax)
melkonian@wrightclosebarger.com

**COUNSEL FOR PLAINTIFF— APPELLANT**

**CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2022, I electronically transmitted the attached Brief of Appellant to the Clerk of the Court of the United States Court of Appeals for the Fifth Circuit using the Court's ECF System, which sent a Notice of Electronic Filing to the attorneys of record who have consented in writing to accept this notice as service of this document by electronic means.  I further certify that I have sent a copy of this document via United States First Class Mail, postage prepaid, to the attorneys of record.


*/s/ Raffi Melkonian*
Raffi Melkonian

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,579 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in Century Schoolbook (Scalable) 14pt for text and Century Schoolbook (Scalable) 12pt for footnotes.

*/s/ Raffi Melkonian*
Raffi Melkonian